**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

JOHN GREGORY REILLY,                      §
                                          §
      Plaintiff,                    §
                                          §
v.                                        §      No. 3:05-CV-0081-M
                                          §
TXU CORPORATION,                          §
TXU BUSINESS SERVICES COMPANY,            §
                                          §
      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is a portion of Defendants TXU Business Services Company and TXU

Corporation's Motion for Summary Judgment [Docket Entry #51].  The issue before the Court is

whether Plaintiff John Gregory Reilly, who was an employee of TXU Business Services

Company ("TXU Business"), may bring claims against its parent, TXU Corporation.  Because

the now retired presiding judge granted summary judgment on another ground, a decision which

was later reversed on appeal, this issue has not been reached previously.  For the reasons below,

the Court finds that because TXU Business and TXU Corporation were not a single enterprise /

single employer, TXU Corporation is not liable for the acts of TXU Business, and is entitled to

summary judgment on Plaintiff's claims.

*Background*

During the relevant period, TXU Business performed for several other TXU Corporation

subsidiaries services including human resources, procurement, and information technology.  In

1989, Plaintiff began working with the predecessor to TXU Business, and worked continuously

for that company, or TXU Business, until May, 2004.  In March 2002, Plaintiff applied for the

newly created position of Strategic Sourcing Manager, a position within TXU Business which involved working with other TXU Corporation subsidiaries to coordinate their procurement efforts and thereby reduce overhead costs.  Plaintiff, a Caucasian male, was not selected for the position; instead, Ayanna Clunis, an African-American female who had not previously worked at TXU Business, was selected.[1]

On May 18, 2004, Plaintiff received a letter from "TXU" stating that TXU Corporation "along with its subsidiaries, 'TXU'" was entering into "an exciting new joint venture" with Capgemini Energy LP, and as a result, some TXU Business employees, including Plaintiff, would instead be employed by Capgemini.  Two TXU subsidiaries, TXU Energy Company, LLC ("TXU Energy") and TXU Electric Delivery Company, entered into a contract with Capgemini by which TXU Business employees would be "outsourced" to Capgemini, performing the same job responsibilities for a new employer.

Plaintiff was terminated by TXU, but his termination was accompanied by an unconditional offer of employment with Capgemini and an optional severance package from TXU, guaranteeing him TXU Severance Plan benefits if Plaintiff were terminated by Capgemini within the first eighteen months of his hiring by Capgemini.[2]  To be eligible for the TXU severance package, Plaintiff was obligated to sign a release of claims against TXU Corporation and TXU Business, within forty-five days of receiving the offer for employment with Capgemini.  He declined to sign the release.  After forty-five days, Capgemini was informed by TXU Energy that Plaintiff had not signed the release.[3]

---

[1] Clunis' selection forms the basis of Plaintiff's § 1981 discrimination claim.  Plaintiff asserts that he was more highly qualified for the position, but that Clunis was given the job to promote corporate diversity.

[2] TXU Severance Plan benefits were unavailable if the transferred employee was fired at any time for cause.

[3] Defendants state that TXU Energy was obligated to inform Plaintiff's subsequent employer that Plaintiff did not sign the release, because it affected the amount of severance benefits he would be entitled to if he were laid off from his job with Capgemini.  *See infra* note 16.

On September 23, 2004, Capgemini announced staff reductions, expecting to eliminate two hundred positions beginning in October 2004, with more reductions planned for February, 2005.  On October 27, 2004, Reilly was informed that his position had been eliminated, but because he had not signed the release, he would not receive TXU Severance Plan benefits.

Reilly brought suit against Defendants TXU Business and TXU Corporation under 42 U.S.C. § 1981, claiming race discrimination and unlawful retaliation.  Defendants moved for summary judgment on several grounds.  The sole issue now before the Court is whether TXU Corporation and TXU Business acted as a single enterprise/single employer so as to make TXU Corporation liable for TXU Business' decisions.

*Analysis*

In the Fifth Circuit, there is a strong presumption that a parent corporation is not the legal employer of its subsidiary's employees and thus, a parent company is ordinarily not liable for the discriminatory acts of its subsidiary.[4]  However, a plaintiff may overcome that presumption by proving that the parent company and its subsidiary are a single enterprise.[5]  In *Johnson v. Crown Enterprises, Inc.*, the Fifth Circuit examined these factors to determine whether there was a single unit for the purposes of establishing liability under § 1981: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.[6]  The Fifth Circuit has held that the second factor, centralized control of labor relations, is "the most important" and that the "analysis ultimately focuses on the question

[4] *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997).
[5] *See Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 344 (5th Cir. 2005) (§1981 claim); *Lusk*, 129 F.3d 773, 776 (ADEA claim, brought under 29 U.S.C. §§ 621-634); *Trevino v. Celanese Corp.*, 701 F.2d 397, 403-04 (5th Cir. 1983) (Title VII claim, brought under 42 U.S.C. § 2000e et seq.).  Because the Fifth Circuit in *Johnson* uses the term single enterprise when analyzing a § 1981 claim, the Court uses the same terminology here.
[6] 398 F.3d at 343 (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)).  In *Johnson*, the Fifth Circuit assumed that the single enterprise test applied to § 1981 claims, and dismissed the plaintiff's claim against the parent because it found the parent company did not form a single enterprise with its subsidiary.  In the Title VII and ADEA contexts, the relevant test is the "single employer" test.  The Court does not regard the single employer/single enterprise phrasings as materially different.

3

whether the parent corporation was a final decision-maker in connection with the employment matters underlying the litigation."[7]   The emphasis on the second factor has led to a de-emphasis of the third and fourth factors, culminating in the Fifth Circuit's holding that common management and common ownership are "ordinary aspects of a parent-subsidiary relationship" that, without more, cannot establish joint liability.[8]

To find a single enterprise, there must be some nexus between the parent company and the subsidiary's daily employment decisions, to support an inference that the subsidiary and the parent were "functionally integrated."[9]   In *Johnson*, the Fifth Circuit found evidence of interrelated operations and common management, but because the parent company was uninvolved with the subsidiary's personnel decisions, the two were held not to be a single enterprise.[10]   In *Johnson*, the parent and subsidiary companies operated from the same building, shared secretarial support and supplies, and did not separately account for time the subsidiary's employees spent doing administrative work for the parent.   Further, the personnel director of the parent corporation was the first to respond to the discrimination claim, which was brought by an employee of the subsidiary.   The parent's personnel director testified that any of the subsidiary's contractors "could have gone to him with any complaints about the nonrenewal of a contract" with the subsidiary.[11]   The *Johnson* court found that without evidence that the parent company actually made its subsidiary's labor decisions, the most important factor of the single enterprise test had not been proven and the parent corporation was entitled to summary judgment on the plaintiff's claims.

---

[7] *Lusk*, 129 F.3d at 777 (citing *Trevino*, 701 F.2d at 404).
[8] *Id*. at 778.   Ordinary aspects include "[c]ommon management and ownership" and "possession of a controlling interest in [a] subsidiary, [which] entitles the parent to the normal incidents of stock ownership, such as the right to select directors and set general policies."   *Id*.
[9] *Id*. at 778-79.
[10] *Johnson*, 398 F.3d at 344.
[11] *Id*. at 345.

In *Lusk v. Foxmeyer Health Corporation*, the parent company and its subsidiary had common corporate headquarters and shared a primary phone number.  Some directors and officers held positions with both the parent and subsidiary, and those joint directors and officers designed and implemented the subsidiary's reduction-in-force plan.  The Fifth Circuit held that level of integration insufficient for the purposes of the single enterprise test.[12]  The *Lusk* court found that the parent did not "excessively influence or interfere with the business operations of its subsidiary," which would be evidenced by "[a]ttention to detail," as opposed to "general oversight."[13]  In contrast, in *Trevino v. Celanese Corporation*, summary judgment was denied based on "the existence of over a hundred documents, signed by the parent's managers, authorizing lay-offs, recalls, promotions, and transfers of the subsidiary's employees" to the parent corporation.  In *Trevino*, the relevant decision-makers were employees of the parent company and former employees of one entity testified they considered themselves *de facto* employees of the other.[14]

Defendant TXU Corporation argues that it is entitled to summary judgment because it "had no involvement whatsoever in the two acts that form the basis of Plaintiff's claims in this case."[15]  TXU Corporation claims that it had no involvement in the Strategic Sourcing Manager hiring decision or the decision to notify Capgemini that Plaintiff did not sign the Severance Plan release.  TXU Corporation further argues that Plaintiff has offered no evidence showing that it and TXU Business shared anything more than an ordinary parent-subsidiary relationship, which does not give rise to liability against TXU Corporation.

---

[12] *Lusk*, 129 F.3d at 780.  *Lusk* is an ADEA case applying the *Trevino* factors.
[13] *Id.* at 778 (quoting *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 982 (4th Cir. 1987)).
[14] *Trevino*, 701 F.2d at 399, 404.
[15] Defendants' Brief 34.

In response, Plaintiff alleges that TXU Corporation and TXU Business share "key aspects of Defendants' businesses such as aspects of their labor, employment, and human resources" and that TXU Corporation oversees and controls "material aspects" of TXU Business.  Plaintiff argues that the extent of TXU Corporation's involvement is evidenced by: (1) the joint venture agreement controlling Plaintiff's termination by TXU and offer of employment from Capgemini, (2) shared human resources policies and personnel, and (3) the fact that the May 18, 2004 letter referred to the joint venture as having been entered into by TXU Corporation "along with its subsidiaries," thus allegedly proving that Reilly was in fact terminated by TXU Corporation. Though some of these facts indicate a degree of interrelated operations, the totality of the circumstances does not overcome the strong presumption of separate entity status.

1.   The Contract Between TXU Energy and Capgemini

It is uncontroverted that Plaintiff's termination by TXU Business and subsequent hiring by Capgemini was affected by contracts between Capgemini and TXU Energy.[16]  Plaintiff has produced only the cover and a single page of the "Master Agreement" between TXU Energy and Capgemini, from which Plaintiff argues as follows: (1) Plaintiff's termination was governed by contracts between Capgemini and two TXU subsidiaries that were not Plaintiff's employer; (2) the only apparent connection between Plaintiff's employer, TXU Business, and TXU Energy was that both are subsidiaries of TXU Corporation; and (3) therefore, TXU Corporation must be making the employment decisions at the heart of this suit.  The bare inference Plaintiff draws is insufficient to support Plaintiff's theory.  It certainly does not constitute evidence of involvement by TXU Corporation which overcomes the presumption of separate entity status between TXU Corporation and TXU Business.  TXU Business had previously performed services for TXU

---

[16] The Defendants state that TXU Electric Delivery Company was also a party, but the cover page of the contract submitted only refers to TXU Energy Company, LLC.  *See* App. 12.

Energy, which TXU Energy was choosing to have performed instead by Capgemini.  The TXU

Business employees, including Plaintiff, would thus no longer be performing those services for

TXU Business.   Nothing the Plaintiff has produced implicates TXU Corporation in that action.[17]

2.   Shared Corporate Resources

Plaintiff next argues that because TXU Corporation and TXU Business shared human

resources policies and personnel, the required nexus between TXU Corporation and the daily

employment decisions of TXU Business has been established.  Viewing the evidence in the light

most favorable to the Plaintiff, such resource pooling is of little significance to whether TXU

Corporation actually made the personnel decisions that led to Plaintiff's claims.  Plaintiff has

identified some shared human resources personnel who handled "issues among all of [TXU's]

affiliates," yet the human resources representative who participated in Plaintiff's initial interview

for the Strategic Sourcing Manager position worked only for departments within TXU

Business.[18]  Further, neither party disputes that Debbie Dennis, Vice President of TXU Business'

Procurement Department, made the final hiring decision for the Strategic Sourcing Manager

position.  There is no evidence that final decision-making authority for that placement rested

with anyone other than management of TXU Business.[19]

Because the Strategic Sourcing Manager's responsibilities included working with TXU

Corporation and various TXU subsidiaries, Plaintiff suggests that TXU Corporation and its

---

[17] The Court notes an inconsistency with the evidence regarding who notified Capgemini about Reilly's refusal to sign the release.  Defendant states that TXU Energy notified Capgemini pursuant to a contractual obligation, and the affidavit of Deborah Dennis, Vice President of TXU Business, supports this account.  However, in an affidavit, Molly Thompson, who identifies herself as an employee of "TXU Power" (an entity the Court could not find otherwise mentioned in the cited evidence), states that *she* notified Capgemini of Reilly's refusal to sign the release.  The Court has no other evidence regarding what role, if any, "TXU Power" assumed in the events in question. There is no evidence that Thompson was ever employed by TXU Corporation.

[18] Gano Deposition 12:12-17 (App. 024).  Mary Gano stated in her deposition that she "worked within Business Services, which [she] thought was a part of TXU Corp." and that "Corporate was the umbrella and Business Services was part of that umbrella."  *Id.* at 11: 2-11.  That testimony does not prove the point Plaintiff argues.

[19] *Johnson*, 398 F.3d at 333.

subsidiaries were operating as a single enterprise.  Actually, the fact that TXU Business created a position designed to interface with TXU Corporation and its subsidiaries tends to indicate a *separation* of the entities, rather than a single enterprise.

3.   Letter of Termination and Waiver of Liability

Finally, Plaintiff points to the termination letter coming from TXU "along with its subsidiaries" and the proffered release of claims against "TXU Corp and/or TXU Business Services Company" as evidence that TXU Corporation and TXU Business are a single business enterprise.  These documents show no more than the general oversight approved of in *Lusk* or the common management found acceptable in *Johnson*, and do not show functionally integrated business operations like those in *Trevino*.

*Conclusion*

Plaintiff has not overcome the strong presumption against single enterprise liability. Though the entities shared some resources, there is no evidence that TXU Corporation was actively involved in the day to day management of TXU Business or was "the final decision-maker in connection with the employment matters underlying the litigation."  Accordingly, TXU Corporation cannot be held liable for Plaintiff's claims.  TXU Corporation's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED.**

March 31, 2009.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**